*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ISAAC MENDEZ,

        Plaintiff,                                   Civ. Action No.: 11-6932 (FLW)

v.                                                   **OPINION**

NEW JERSEY STATE LOTTERY COMMISSION,
NEW JERSEY ATTORNEY GENERAL,
NEW JERSEY STATE TREASURY
NEW JERSEY DEPARTMENT OF ARCHIVES &
RECORDS MANAGEMENT,
NEW JERSEY OFFICE OF THE PUBLIC
ADVOCATE,
LOUIS DAVID BALK, ESQ.,
MARIBEL TORRES,
REYNALDO TORRES,
MARC SAPIN, ESQ.
LAW FIRM OF FUCHS, GREENBERG & SAPIN,
LAWRENCE LEVEN, ESQ.

        Defendants.
_____

**WOLFSON, District Judge:**

        Presently before the Court are three separate motions filed, respectively, by Defendants New Jersey State Lottery Commission, New Jersey Attorney General, New Jersey State Treasury, New Jersey Department of Archives & Records Management and New Jersey Office of the Public Advocate (collectively, the "State Defendants"), Defendant Louis David Balk, Esq. ("Balk") and Defendants Marc E. Sapin, Esq. and the Law Firm of Fuchs, Greenberg & Sapin (collectively, the "Sapin Defendants"), to dismiss Plaintiff Isaac Mendez's ("Plaintiff") Second Amended Complaint (the "Complaint"). Plaintiff's three-count Complaint asserts causes of

1

action under 42 U.S.C. §§ 1983 and 1985 and broadly alleges that the State Defendants, acted in concert with the other non-State Defendants, deprived Plaintiff of his procedural due process rights in two separate actions in the New Jersey State Courts relating to an investigation of a lottery ticket.  For the reasons that follow, the motions to dismiss are **GRANTED**.[1]

## I.  BACKGROUND & PROCEDURAL HISTORY

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). As such, the following facts are taken from the Complaint.[2]

Plaintiff claims that he purchased the winning ticket for the New Jersey Lottery Pick 6 on September 16, 2002.  Compl. ¶ 61.  Shortly after purchasing the ticket, Plaintiff inadvertently dropped the ticket while on the bus.  Id. at ¶ 66. Plaintiff alleges that Maribel Torres, Reynaldo Torres and Juan Carlos Ayala found the ticket, and they subsequently filed a claim for the winning ticket on or about September 25, 2002.  Id. at ¶¶ 67-69.  Around the same time, Plaintiff also claimed ownership of the winning ticket by contacting the New Jersey Lottery Commission ("Lottery Commission").  Id. at ¶ 70.  Because there were two claims made for the

---

[1]  Defendants Maribel and Reynaldo Torres have not been served with the Complaint in this matter.  Additionally, while defendant Lawrence Leven has been served, he has not moved to dismiss the Complaint.

[2]  Plaintiff's 128-page Complaint, while not a picture of clarity, alleges the underlying facts in torturous detail.  It is unnecessary to repeat every allegation here, and thus, the Court recounts only those facts relevant to deciding the instant motions.

same winning ticket, the Lottery Commission opened an investigation. Id. at ¶ 71. After the conclusion of the investigation, the winnings were paid to Maribel and Reynaldo Torres. Id. at ¶ 72.

Subsequent to the Commission's decision, on November 12, 2002, Plaintiff filed suit in the Superior Court of New Jersey, Hudson County, docket no. HUD-L-7987-02 (the "2002 action"), against the Lottery Commission and Acting Director Carole Heidinger, alleging that they denied Plaintiff a hearing in order to determine ownership of the winnings. Id. at ¶ 73. The state court complaint also named Maribel and Reynaldo Torres as defendants. Id. Prior to the start of the trial, on October 8, 2003, an agreement was reached between the parties' attorneys, including Plaintiff's attorney, wherein the Lottery Commission and Hedinger would be granted a voluntary dismissal in exchange for making available the testimony of Lottery Commission employees without the need of subpoenas. Id. at ¶ 74. The trial occurred on October 28, 2003, during which two investigators from the Lottery Commission testified. Hedinger was not called to testify at trial. Id. at ¶ 75. On November 3, 2003, the jury ruled in favor of the Torreses and awarded them the lottery winnings in the amount of $1,955,158. Id. at ¶ 77. Plaintiff filed a notice of appeal on December 12, 2003; Plaintiff's appeal was denied by the Appellate Division on October 21, 2004. Id. at ¶¶ 78, 82.

On October 9, 2009, Plaintiff filed a second lawsuit in the Superior Court of New Jersey, Hudson County, against the State Defendants, docket no. HUD-L-5075-09 (the "2009 case"). Id. at ¶ 90. That complaint initially sought an injunction to protect an audio tape recording of Plaintiff's statement to the Lottery Commission

3

and security video surveillance footage from the Lottery Commission headquarters. Id. On motion from the State Defendants, the case was transferred to Mercer County on November 5, 2009. Id. at ¶ 108. Plaintiff filed an amended complaint on November 16, 2009, adding new defendants and allegations of civil rights violations which he claimed occurred during the 2002 action. Id. at ¶ 110. With the new allegations, Plaintiff improperly removed the case to federal court on November 23, 2009; the case was remanded to state court on January 6, 2010.[3] Id. at ¶¶ 112, 121. The Sapin Defendants filed an answer to Plaintiff's amended complaint on January 15, 2010. Id. at ¶ 136.

On January 11, 2010, the State Defendants moved to dismiss the 2009 complaint, which was granted on February 5, 2010. Id. at ¶¶ 126, 143. Subsequently, the state court clarified that the February 5, 2010 order only dismissed Plaintiff's initial complaint, and not the amended complaint.[4] Id. at ¶¶ 162, 173. Plaintiff filed for default against the State Defendants on March 19, 2010. Id. at ¶ 175. The Mercer County Court Clerk entered default as to the State Defendants on April 7, 2010. Id. at ¶ 180. The State Defendants thereafter moved to vacate the default on April 26, 2010. Id. at ¶ 188. On May 14, 2010, the state court

---

[3] The amended complaint in the 2009 case included claims arising under 18 U.S.C.S §§ 1505 & 1512, which are federal criminal statutes. It appears Plaintiff based his removal motion upon the assertion of those statutes. However, the District Court remanded the case because Plaintiff, as a private citizen, lacked standing to bring claims under federal criminal statutes. Compl., ¶¶ 112, 121.

[4] Because of an administrative oversight, Plaintiff's amended complaint was missing from the clerk's file for a period of time. Ultimately, the error was corrected, and the case proceeded.

4

found that Plaintiff had not properly served the State Defendants with the amended complaint and granted the motion to vacate default. Id. at ¶ 204.

On July 23, 2010, the state court granted the Sapin Defendants' motion to dismiss, finding that Plaintiff's claims against them were barred by the two-year statute of limitations. Id. at ¶ 208. Plaintiff subsequently filed a motion for relief from certain orders previously entered by the state court. The state court denied the request. Thereafter, Plaintiff appealed that decision, but the appeal was soon dismissed by the Appellate Division on the basis that the trial court decision was not final. Id. at ¶ 221. On December 17, 2010, the trial court dismissed Plaintiff's case against the State Defendants for lack of prosecution. Id. at ¶ 222. While unclear, it appears that Plaintiff unsuccessfully appealed the trial court decisions dismissing the Sapin and State Defendants to both the Appellate Division and the Supreme Court. Id. at ¶¶ 239, 241.

Dissatisfied with the state courts' decisions, Plaintiff initiated this action. Plaintiff's Complaint asserts three separate counts: (1) the State Defendants deprived Plaintiff of his procedural due process rights and to a default judgment in the 2009 case, and the non-State Defendants furthered the State's purpose; (2) the State Defendants deprived Plaintiff of his default judgment by abuse of process; and (3) the State and non-State Defendants deprived Plaintiff of his due process rights to a fair trial. More specifically, while the Complaint is not entirely clear as to the basis and nature of Plaintiff's causes of action, Count I alleges that both the State and non-State Defendants violated Plaintiff's rights pursuant to 42 U.S.C. § 1983 (Id. at ¶ 244) and Counts II and III allege certain unspecified civil rights violations under 42 U.S.C.

5

§ 1983 and conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 (Id. at ¶¶ 267, 281).

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

6

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Iqbal, 129 S.Ct. at 1953).

### III. DISCUSSION

#### A. Claims against State Defendants

Gleaning from the Complaint, in asserting violations of his procedural due process rights under § 1983, it appears Plaintiff alleges that the State Defendants (1)

7

deprived Plaintiff of his right to default judgment; (2) failed to follow the New Jersey Rules of Civil Procedure or common law; (3) abused their discretionary power to reinstate the defaulted State Defendants in the 2009 case; (4) allowed and facilitated the destruction of video surveillance footage evidence relevant to the 2009 case; (5) abused the process by improperly closing the 2009 case; (6) deprived Plaintiff his right of access to the courts; and (7) deprived Plaintiff of his right to a tribunal free of bias and prejudice. See Compl. at ¶¶ 16-20. In response, the State Defendants argue that Plaintiff's claims are improperly asserted as Plaintiff's allegations primarily refer to actions taken by the State Judiciary, and Plaintiff has not named the New Jersey State Judiciary as a defendant in this action.[5] Additionally, the State Defendants contend that Plaintiff is not a person protected under 42 U.S.C. § 1985 and that all of Plaintiff's claims arise out of actions taken more than two years before the initial filing of this matter, and thus, are barred by the statute of limitations. While the State Defendants' arguments may have merit, I must determine, at the first instance, whether the Court has subject matter jurisdiction. Because I find that the State Defendants – which entirely consist of agencies of the

---

[5] It is clear that Plaintiff's claims would also be barred against the New Jersey State Judiciary and any individual judges or employees of the judiciary had Plaintiff named them as defendants. It is well-established that "state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state." Dongon v. Banar, 363 Fed. Appx. 153, 156 (3d Cir. 2010) (citing Johnson v. New Jersey, 869 F. Supp. 289, 298 (D.N.J. 2001). Also, these individual judges and employees would be judicially immune from suit. Mireles v. Waco, 502 U.S. 9, 12 (1991); see Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000).

State of New Jersey – are immune from suit under the Eleventh Amendment, the Court lacks subject matter jurisdiction.

While section 1983 grants a plaintiff means to sue persons acting under state law, it does not abrogate Eleventh Amendment immunity and permit suits directly against the State or arms of the State. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."[6] The amendment precludes federal jurisdiction over a state absent the state's consent to suit. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). The immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. Id. at 101—02; Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978).

Sovereign immunity applies even if the state is not a named party to the action, "'as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989). Thus, a plaintiff may not evade or circumvent a defendant's assertion of sovereign immunity by purposefully omitting the state as a formal party to a complaint. Chisolm v. McManimon, 275 F.3d 315, 322-23 (3d Cir. 2001). In Fitchik, the Third Circuit

---

[6] Notably, the Eleventh Amendment also precludes federal jurisdiction over a state absent the state's consent to suit. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Hence a section 1983 claim against the State is not only barred by the Eleventh Amendment, but federal courts also lack subject matter jurisdiction over such a claim. Id.

9

explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d at 659. In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." Davis v. Lakewood, No. 03-1025, 2005 U.S. Dist. LEXIS 16420, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005) (citing Chisolm, 275 F.3d at 323).

The Fitchick court also set forth a three-factor test when determining whether a defendant is an "arm of the state" entitled to sovereign immunity. These factors include: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Fitchik, 873 F.2d at 659; see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 948 F. Supp. 400, 409 (D.N.J. 1996) (precluding suit where "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'") (internal citation omitted). In applying this three-factor test, the Third Circuit noted that not all three factors are not to be given equal weight; rather, the first inquiry — whether any judgment would be paid from the state treasury — is the most important question and generally proves dispositive. Fitchik, 873 F.2d at 659; Febres v. Camden Bd. Of Educ., 445 F.3d 227, 229 (3d Cir. 2006); Davis, 2005 U.S. Dist. LEXIS 16420, 2005 WL 1863665, at *3.

However, "[a] State's immunity from suit is not absolute." Lombardo v. Pennsylvania, 540 F.3d 190, 195 (3d Cir. 2008). "[T]here are only three narrowly

10

circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. 2003) (citing MCI Telecomms. Corp. v. Bell Atlantic-Pennsylvania Serv., 271 F.3d 491, 503 (3d Cir. 2001), cert. denied, 537 U.S. 941, 123 S. Ct. 340, 154 L. Ed. 2d 247 (2002).

As to the first exception, it is clear that there is no Congressional abrogation of New Jersey's immunity under 42 U.S.C. §§ 1983 or 1985. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979); Seeney v. Kavitski, 866 F. Supp. 206, 209 (E.D. Pa. 1994). Similarly, as to the second scenario, New Jersey has not waived its sovereign immunity with respect to § 1983 or § 1985 claims in federal court. Mierzwa v. United States, 282 Fed. Appx. 973, 976 (3d Cir. 2008); Garcia v. Richard Stockton College, 210 F.Supp 2d. 545, 549-550, (D.N.J. 2002). Finally, the third exception also does not apply here as Plaintiff has not named any individual state officials as a defendant.[7]

Here, it is clear that the Lottery Commission, Attorney General, the State Treasury, Division of Archives and Records Management and Office of the Public Advocate[8] qualify as "arms of the state" entitled to sovereign immunity under the

---

[7]   Plaintiff's claims against the State Defendants also fail for the additional reason that the State Defendants -- which are state agencies -- are not "persons" under sections 1983 and 1985. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Rode v. Dellarciprete, 617 F. Supp. 721, 723 n.2 (M.D. Pa. 1985), vacated in part on other grounds, 845 F.2d 1195 (3d Cir. 1988) (noting that "persons" in § 1983 and "persons" in §1985 have the same meaning).

[8]   The Court notes the Office of the Public Advocate, while previously an executive agency, was eliminated in 2010.

11

Eleventh Amendment. In that respect, it is axiomatic that the State Treasury is an "arm of the state" because, clearly, payment of a judgment resulting from a suit against the State Treasury would come from the state's coffers. See Rohrabacher v. Olivio, No. 07-01496 (FLW), 2008 U.S. Dist. LEXIS 33392, at *7 (D.N.J. Apr, 23, 2008). Additionally, the Lottery Commission qualifies as an "arm of the state" as it is a part of the Treasury Department. See N.J.S.A. § 5:9-4 (authorizing statute establishing within the Treasury Department the Division of State Lottery, "which shall include a State Lottery Commission"). Similarly, the Division of Archives and Records Management is under the authority of the Department of State. Further, other courts in this district have specifically recognized that the Office of the Attorney General is immune from § 1983 suits under the Eleventh Amendment. See Torres v. Davis, No. 11-6190, 2012 U.S. Dist. LEXIS 87446, *17-18 (D.N.J Jun. 22, 2012); Watkins v. Attorney General of New Jersey, No. 06-1391, 2006 U.S. Dist. LEXIS 73075 (D.N.J. Oct. 3, 2006).

In sum, Congress has not abrogated immunity in this instance, nor has New Jersey otherwise waived its immunity to Plaintiff's claims under 42 U.S.C. § 1983 or § 1985. Therefore, this Court lacks subject matter jurisdiction to hear such claims as they are barred by the Eleventh Amendment. Accordingly, the Plaintiff's claims against the State Defendants are dismissed.

### B. Claims against the Non-State Defendants

Balk and the Sapin Defendants (collectively, the "Non-State Defendants") contend that Plaintiff's claims against them should be dismissed for failure to state a claim. The Court is mindful that the sufficiency of this *pro se* Plaintiff's pleading

must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  It appears that the Complaint's allegations against the Non-State Defendants arise out of the August 3, 2003 agreement with the Attorney General, and Plaintiff's former counsel, concerning the voluntary dismissal of the Lottery Commission from the 2003 action.  However, even construing Plaintiff's Complaint liberally, it is clear that Plaintiff's claims against those defendants do not meet the Iqbal standard.  The Court shall examine each of Plaintiff's causes of action against the Non-State Defendants below.

### 1.  Claims under §1983

Section 1983 serves a mechanism through which plaintiffs may bring suit in federal court for civil rights violations committed by state actors.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

As it is clear from Plaintiff's Complaint, any violations of Plaintiff's constitutional rights cannot be attributed to the Non-State Defendants as Plaintiff cannot show that those defendants were acting within the color of state law.

13

Indeed, these private defendants are not public entities or officials subject to the purview of § 1983. Catanzaro v. Collins, Civil Action No. 09-922, 2010 U.S. Dist. LEXIS 41284, *24-25 (M.D. Pa. Apr. 27, 2010) ("Private attorneys and public defenders are generally not considered state actors for § 1983 purposes when acting in their capacities as attorneys.") aff'd 447 Fed. Appx. 397 (3d Cir. 2011); see also Polk County v. Dodson, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981))("[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Thus, the Non-State Defendants are private individuals for § 1983 purposes.

Nor has Plaintiff sufficiently pled a claim for conspiracy under § 1983. "A private individual may be considered to be acting 'under color of law' for § 1983 purposes if he or she engages in a conspiracy with state actors for the purpose of violating a plaintiff's protected civil rights. Cantazaro, 2010 U.S. Dist. LEXIS 41284, at *25; see also Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) (citations omitted) ("Private persons, jointly engaged with state officials in the challenged action, are acting see 'under color' of law for purposes of § 1983 actions."). However, Plaintiff's allegations that the Non-State Defendants acted in concert with the State Defendants to withhold evidence and witnesses in the 2003 action fail to state a claim under § 1983 because Plaintiff's allegations are nothing more than unfounded legal conclusions without any plausible factual basis. As such, Plaintiff has not pled that the Non-State Defendants were acting "under color of state law" within the meaning of § 1983. Therefore, Plaintiff's § 1983 claims against the Non-State Defendants are dismissed.

### 2. Claims under § 1985

Section 1985(3) permits a party to bring an action to recover for injuries incurred by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To establish a claim for civil conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Here, the Complaint fails to allege that the Non-State Defendants, "motivated by a class-based invidiously discriminatory animus, conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws and that plaintiff was thereby injured." Cantazaro, 2010 U.S. Dist. LEXIS 41284, at *27 (citing Bougher v. University of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989). Even a liberal interpretation of the Complaint fails to reveal any allegations that the Non-State Defendants, or any other named defendants, were "motivated by a racial or class based discriminatory animus" towards Plaintiff. 42 U.S.C.S. § 1985(3). As such, the Complaint fails to state a claim under § 1985(3).

Finally, even if the Complaint sufficiently alleged facts supporting a cause of action under § 1983 or § 1985 against the Non-State Defendants, Plaintiff's claims

15

would nevertheless be barred by the statute of limitations. Both § 1983 and § 1985 claims are subject to a two-year statute of limitations. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010) (statute of limitations for a § 1983 claim in New Jersey is two years); Bougher, 882 F.2d at 79 (statute of limitations for personal injury actions applies to section 1985(3) claims). As the events underlying Plaintiff's claims against the Non-State Defendants took place in 2003, more than two years before Plaintiff filed the Complaint in this matter, Plaintiff's claims are barred by the statute of limitations.

As a final note, the Court will briefly address what appears as Plaintiff's request for declaratory judgment against the State Defendants. Although unclear from the brief, Plaintiff requests a default judgment against the State Defendant in favor of Plaintiff, not in the present matter, but in the 2009 state court action. Plaintiff's request is denied for several reasons. To the extent Plaintiff seeks default judgment entered in the present matter, Plaintiff's motion is improper as the State Defendants are not in default and no causes of action against the State Defendants remain in this matter. Insofar as Plaintiff seeks judgment on the 2009 state action, the Court lacks the authority to direct the state court to enter judgment or to enter such judgment directly. Accordingly, Plaintiff's request is denied.

### C.  Defendants Maribel and Reynaldo Torres and Leven

Since 120 days have elapsed and Plaintiff has failed to serve the Torreses, the Court dismisses these two defendants for failure to effectuate proper service. See Powell v. Symons, 680 F.3d 301, 310 n.8 (3d Cir. 2012) ("Where a plaintiff fails without good cause to effect service on a defendant within 120 days of the filing of a

16

complaint, a district court does not abuse its discretion by dismissing the action against that defendant without prejudice."). Moreover, Plaintiff's federal claims against the Torreses and Leven are dismissed for the same reasons why Plaintiff's federal claims against the Non-State Defendants are dismissed. Indeed, Leven and the Torreses are private parties who are not subject to the purview of sections 1983 and 1985. Accordingly, Plaintiff's claims against these defendants are dismissed for failure to state a claim.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint fails to state a cause of action under 42 U.S.C. § 1983 or § 1985 against the moving defendants: Plaintiff's claims against the State Defendants are barred by sovereign immunity under the Eleventh Amendment. As to the Balk and the Sapin Defendants, they are not state actors within the meaning of § 1983 and Plaintiff has failed to allege that any of their actions were motivated by a class-based invidiously discriminatory animus. Additionally, there is no basis for granting Plaintiff's motion for default judgment against the State Defendants. Accordingly, Plaintiff's request is DENIED; Defendants' motions are GRANTED; those claims asserted against the State and Non-State Defendants are dismissed. Finally, for the same reasons why Plaintiff's claims against the Non-State Defendants are dismissed, Plaintiff's causes of actions against Maribel and Reynaldo Torres and Leven are dismissed.

DATED: December 17, 2012         /s/ Freda L. Wolfson
                                 Freda L. Wolfson, U.S.D.J.